IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDON NELSON, #S10306, )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>MOHAMMED SIDDIQUI, M.D., RYAN )<br>SUTTERER, O.D., and WEXFORD )<br>HEALTH SOURCES, INC., )<br>)<br>**Defendants.** | Case No. 20-cv-429-RJD |

## ORDER

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants' Motion for Summary Judgment (Docs. 30 and 31). Plaintiff filed a Response (Doc. 39) and Defendants filed a Reply (Doc. 40). As explained further, Defendants' Motion is DENIED.

### Background

Plaintiff, currently incarcerated within the Illinois Department of Corrections ("IDOC"), filed this suit pursuant to 42 U.S.C. §1983, alleging that Defendants were deliberately indifferent to his serious medical condition at Menard Correctional Center ("Menard"). Plaintiff suffers from keratoconus, a debilitating eye condition that causes him severe pain, headaches, double vision, and seeing "floating movements" (Doc. 1, p. 4). Plaintiff alleges that without surgery, he will lose vision in both eyes (*Id.*, p. 4). Plaintiff started seeing Dr. Ryan Sutterer, an optometrist, at Menard in June 2016 (*Id.*, p. 6). Plaintiff saw a specialist in March 2017 (Dr. Umana) who recommended surgery, but Dr. Sutterer, Dr. Siddiqui (the medical director at Menard), and Wexford Health Sources, Inc. (a private company that contracts with IDOC to provide healthcare

to inmates) refuse to follow the recommendation (*Id.*). Plaintiff filed this suit on May 7, 2020. Defendants Siddiqui and Wexford Health Sources, Inc. ("Wexford") move for summary judgment, contending that Plaintiff failed to exhaust his administrative remedies against them prior to filing suit.

## Legal Standards

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

***Exhaustion Requirements***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*,

286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). The grievance must contain the following:

> ….factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(b).

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final

determination within 6 months of receipt of the appeal.  20 ILL. ADMIN. CODE § 504.850(d) and (e).  Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer.  *Id.* § 504.840.  If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender.  *Id.*

## Discussion

Defendants failed to meet their burden for summary judgment.  Plaintiff's grievance records reflect that he submitted a grievance on September 25, 2018 that contained the following narrative:

> On 9-14-18 I went to see an outside eye doctor. That eye doctor explained that I had keratoconus, which causes you to lose your vision. He explained that the contacts will only prolong the inevitable me going blind. The only way to stop that is Menard allowing the eye surgery, I need which has been recommended by an eye surgeon.  I have headaches, pain, blurred vision, and floaters in my right eye, and my vision dropped 5% in my left eye between July-August 2018 it went from 20/25/ to 20/30.  The surgeon say I will go blind in my left eye and I want the surgery that I am told I need by the surgeon (Doc. 31-1, p. 13).

The Warden determined this grievance was an emergency, expediting the review (*Id.*).  Defendant Sutterer provided the following information to the grievance office:

> [Plaintiff] has keratoconus…[i]t is treated with prescription glasses

>or contact lenses to improve the vision…At [Plaintiff's} appointment with Dr. Umana on 3/2/18, he discussed the surgery as an option. The surgery is necessary only in rare circumstances. He will be treated with glasses and contact lenses and will be monitored for disease progression"  (*Id*. p. 12).

The grievance officer recommended that the grievance be denied, finding that Plaintiff was 'being seen and treated as medical professionals deem appropriate" (*Id*.).  The warden concurred with this recommendation and Plaintiff appealed to the ARB (*Id*.).  The ARB denied the appeal, stating "all medical treatment is at discretion of IDOC medical staff" (*Id*., p. 13).

This grievance does not mention Dr. Siddiqui or Wexford, and therefore Defendants Siddiqui and Wexford contend that it does not sufficiently exhaust Plaintiff's administrative remedies against them.   Defendants are essentially arguing that prison officials at Menard did not know who was responsible for the decision to permit surgery-an argument that "belies reason." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).  One could reasonably infer from Plaintiff's grievance that when he referred to "Menard" approving his surgery, he was referring to the Medical Director at Menard and the company that provides medical care at Menard.  It appears that the ARB made that inference, as the ARB's response refers to "IDOC medical staff."   Nothing in the record before the Court suggests that when the ARB referred to "IDOC medical staff", they were referring to an entity other than Wexford, or persons employed by an entity other than Wexford, as Wexford contracts with IDOC to provide medical care.

The primary purpose of the grievance process is to alert prison officials of an inmate issue, "not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Id*., (*citing Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).  Plaintiff was only required to provide as much information as possible to identify the subject(s) of his grievance. 20 Ill. Admin. Code § 504.810(c).  Plaintiff

did not specifically identify *anyone* (or any entity other than "Menard") who had denied his surgery, yet prison officials issued their decisions on the merits of the grievance. The Court will not second-guess prison officials' decision to reach a decision on the merits of a grievance despite "technical defect[s]." *Id.*

The grievance also does not identify a specific Wexford policy. In his Complaint, Plaintiff alleges that Wexford is liable in this matter because of its policy to deny surgery unless certain criteria were met (Doc. 1, pp. 5, 10). However, Plaintiff was not required to articulate legal theories in his grievance. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). He identified that "Menard" would not approve his surgery. Wexford is the healthcare provider at Menard. The statements in Plaintiff's grievance sufficiently gave prison officials notice of the issues that Plaintiff attributes in this suit to a Wexford policy.

Viewing the facts and reasonable inference in the light most favorable to Plaintiff, the Court finds Defendants have not met their burden for summary judgment. Their Motion (Doc. 30) is DENIED.

**IT IS SO ORDERED.**

**DATED: March 3, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**